# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**IN Re: MIRAPEX END-PAYOR ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:
ALL ACTIONS

Civil Action No. 09-1044

Chief Judge Gary L. Lancaster

**Electronically Filed Document**

## MEMORANDUM OF LAW IN SUPPORT OF BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S MOTION TO DISMISS END PAYOR PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iv

I.   INTRODUCTION .............................................................................................. 1

II.  PLAINTIFFS' ALLEGATIONS ......................................................................... 3

III. ARGUMENT ..................................................................................................... 6

    A.   Plaintiffs' Claims Fail For The Same Reasons That Mylan's And Direct
       Purchasers' Claims Fail ............................................................................ 6

        1.   Plaintiffs' Clayton Act Section 16 Claim Fails Because Plaintiffs
             Do Not Allege Facts Sufficient To Establish A Viable Federal
             Antitrust Claim ........................................................................... 7

        2.   The State Antitrust And Consumer Protection Claims Must Be
             Dismissed Because Plaintiffs Have Failed To Allege Conduct
             Sufficient To Establish A Viable Claim .................................... 9

            (a)   Like Their Federal Antitrust Claims, Plaintiffs' State
                 Antitrust Claims Fail Because Plaintiffs Do Not Allege
                 Fraudulent, Objectively Baseless Or Improper Conduct ............... 9

            (b)   Plaintiffs' Consumer Protection Law Claims Also Fail For
                 The Same Reasons .................................................................... 11

    B.   Plaintiffs' State Law Claims Are Preempted By Federal Patent Law And,
       Therefore, Must Be Dismissed ............................................................... 13

    C.   Plaintiffs' Claims Under The Laws Of All But Four States Must Be
       Dismissed For Lack Of Standing Under Article III Of The U.S.
       Constitution ............................................................................................ 16

        1.   Plaintiffs Lack Standing In Every State In Which They Have Not
             Alleged Either Residence Or Injury ........................................... 16

         2.   The Fact That Plaintiffs Purport To Bring A Class Action Does
             Not Confer Standing On Them .................................................. 17

         3.   Courts Regularly Dismiss Indirect Purchaser Claims for Lack of
             Article III Standing ................................................................... 18

    D.   Plaintiffs' State Antitrust Law Claims Fail For Several Additional State-
       Specific Reasons .................................................................................... 21

        1.   Plaintiffs Are Precluded From Bringing Suit Under the
             Massachusetts, Puerto Rico and Oregon Antitrust Laws .......... 21

        2.   Because Plaintiffs Have Not Alleged A Substantial Connection To
             *Intra*state Commerce, Their State Antitrust Claims Are Deficient
             Under The Laws Of Nine Jurisdictions ..................................... 22

    E.   Plaintiffs' Consumer Protection Claims Are Also Defective .............................. 26

# TABLE OF CONTENTS
(continued)

Page

1.   Plaintiffs Cannot Pursue A Class Action Under Georgia, Kansas and New York Consumer Protection Laws ............................................... 26

2.   Plaintiffs Cannot Circumvent Antitrust Law Limitations By Recasting Their Claims As State Consumer Protection Law Violations ................................................................................................. 27

     (a)   Because Plaintiffs' Claims Under Delaware and Georgia Consumer Protection Law Are Really Antitrust Claims For Which Those States Provide No Private Right Of Action, They Must Be Dismissed ............................................................. 28

     (b)   Plaintiffs' Transparent Effort To Recast Their Antitrust Claims As Consumer Protection Law Violations Also Cannot Save Their Claims In Arkansas, Illinois, Kansas, Maine, New York, Rhode Island Or West Virginia .................... 29

     (c)   As Indirect Purchasers, Plaintiffs Cannot Bring Claims Under Idaho, Illinois and Rhode Island Consumer Protection Laws. ........................................................................ 30

3.   Plaintiffs' Failure To Adequately Plead Unfair, Unconscionable, Fraudulent Or Deceptive Conduct Defeats Their Consumer Protection Claims Under Sixteen State Statutes ...................................... 31

4.   Plaintiffs' Failure To Plead Their Reliance Upon Misrepresentations By Boehringer Defeats Their Consumer Protection Claims Under Arizona, Georgia, Illinois, Maine And South Dakota Law .................................................................................... 33

5.   Plaintiffs' Failure To Plead Unfairness, Fraud Or Deceit With Particularity Requires The Dismissal Of Their Consumer Protection Law Claims In Arizona, Delaware, Florida, Kansas, Minnesota and West Virginia .................................................................. 34

6.   Plaintiffs' Failure To Plead The Requisite Nexus Between Defendants' Alleged Misconduct And Intrastate Commerce Defeats Their Consumer Protection Claims Under The Laws Of Eleven States ....................................................................................... 35

7.   Plaintiffs' Status And/Or Their Failure To Allege Their Intended Personal, Family Or Household Use Of Mirapex® Defeats Their Consumer Protection Claims Under The Laws Of Eight Jurisdictions ......................................................................................... 36

8.   Because Plaintiffs Failed To Comply With Pre-Filing Notice Requirements Under The Laws Of Georgia, Massachusetts And West Virginia, Their Consumer Protection Claims In Those States Must Be Dismissed ................................................................................. 38

## TABLE OF CONTENTS
(continued)

Page

     9.    Because Plaintiffs Have Not Alleged Conduct By Boehringer Specifically Directed At Consumers, Their New York Consumer Protection Law Claim Must Be Dismissed ............................................ 38

IV.   CONCLUSION ............................................................................................................. 40

## EXHIBITS

Excerpt from March 13, 2008 Trial Transcript, *Boehringer Ingelheim Int'l GmbH v. Barr Labs., Inc. and Mylan Pharms., Inc.*, No. 1:05-cv-00700, No. 1:05-cv-00854 (D. Del.) ...........Exhibit A

Appendices 1-10 ........................................................................................................Exhibit B

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abbott Labs. v. Brennan*,
   952 F.2d 1346 (Fed. Cir. 1991)......................................................................... 13-14

*Allen v. Wright*,
   468 U.S. 737 (1984)............................................................................................3, 17

*Alves v. Hometown Newspapers, Inc.*,
   857 A.2d 743 (R.I. 2004) ......................................................................................12

*Am. Med. Trans. of Wis., Inc. v. Curtis-Universal, Inc.*,
   452 N.W.2d 575 (Wis. 1990) ................................................................................10

*Antioch Co. v. Scrapbook Borders, Inc.*,
   291 F. Supp. 2d 980 (D. Minn. 2003) .....................................................................9

*Ashcroft v. Iqbal*,
   --- U.S. ---, 129 S. Ct. 1937 (2009)......................................................................24

*Aurora Cable Commcn's, Inc. v. Jones Intercable, Inc.*,
   720 F. Supp. 600 (W.D. Mich. 1989) ......................................................................9

*Avery v. State Farm Mut. Auto Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005) ....................................................................................36

*Basic Med. Care Plus, Inc. v. N.C. Mut. Life Ins. Co.*,
   No. 1:03CV00269, 2005 WL 2205016 (M.D.N.C. Sept. 6, 2005).........................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................24, 33

*Bond v. Cedar Rapids Television Co.*,
   518 N.W.2d 352 (Iowa 1994) .................................................................................9

*Boulware v. Nevada*,
   960 F.2d 793 (9th Cir. 1992) .................................................................................10

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
   839 F.2d 155 (3d Cir. 1988)..................................................................................11

*California v. Infineon Techs. AG*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................................24

*CardioVention, Inc. v. Medtronic, Inc.*,
  430 F. Supp. 2d 933 (D. Minn. 2006) ..................................................................14

*Cargill, Inc. v. Monfort of Colo., Inc.*,
  479 U.S. 104 (1986) ...........................................................................................7

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
  168 F.3d 119 (3d Cir. 1999) ..........................................................................11, 12

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
  993 F. Supp. 271 (D.N.J. 1998), *aff'd*, 168 F.3d 119 (3d Cir. 1999) .......................9

*Ciardi v. F. Hoffman-La Roche, Ltd.*,
  762 N.E.2d 303 (Mass. 2002) ......................................................................21, 23

*Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  956 F. Supp. 910 (D. Kan. 1997) .........................................................................9

*Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.*,
  217 F.3d 1187 (9th Cir. 2000) ............................................................................8

*Cunningham v. Bayer AG*,
  No. 603820/00, 2003 WL 25780718 (N.Y. Sup. Ct. Oct. 15, 2003),
  *aff'd*, 24 A.D.3d 216 (N.Y. App. Div. 2005) ...............................................27, 29

*Daiichi Sankyo, Inc. v. Apotex, Inc.*,
  No. 030937, 2009 WL 1437815 (D.N.J. May 19, 2009) .......................................16

*Davric Me. Corp. v. Rancourt*,
  216 F.3d 143 (1st Cir. 2000) ...............................................................................9

*DirecTV, Inc. v. Rowland*,
  No. 04-CV-297S, 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) .............................12

*Dow Chemical Co. v. Exxon Corp.*,
  139 F.3d 1470 (Fed. Cir. 1998) ..........................................................................15

*ERI Max Entm't, Inc. v. Streisand*,
  690 A.2d 1351 (R.I. 1997) .................................................................................37

*Estrada v. City of San Luis*,
  No. CV-07-1071, 2007 WL 4025215 (D. Ariz. Nov. 15, 2007)..............................11

*Ford v. Saint Francis Hosp., Inc.*,
  490 S.E.2d 415 (Ga. Ct. App. 1997) ...................................................................33

*Freeman Indus. LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005) .......................................................................23, 24

*Gaebler v. N.M. Potash Corp.*,
   676 N.E.2d 228 (Ill. App. Ct. 1997) ...............................................................28, 30

*Galvan v. Nw. Mem'l Hosp.*,
   888 N.E.2d 529 (Ill. App. Ct. 2008) ......................................................................32

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004) .............................................................................15

*Good Hope Hosp., Inc. v. N.C. Dept. of Health & Human Servs.*,
   620 S.E.2d 873 (N.C. App. 2005) .........................................................................10

*Grand Ventures, Inc. v. Whaley*,
   632 A.2d 63 (Del. 1993) .........................................................................................37

*Greer v. Shapiro & Kreisman*,
   152 F. Supp. 2d 679 (E.D. Pa. 2001) ......................................................................7

*Harrah's Vicksburg Corp. v. Pennebaker*,
   812 So. 2d 163 (Miss. 2001) ............................................................................. 9-10

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
   516 F. Supp. 2d 324 (D. Del. 2007) ........................................................................8

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ....................................................................................... passim

*In re Auto. Refinishing Paint Antitrust Litig.*,
   515 F. Supp. 2d 544 (E.D. Pa. 2007) ....................................................................38

*In re Brand Name Prescription Drug Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997) .......................................................................... 30-31

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   544 F.3d 1323 (Fed. Cir. 2008) .............................................................................13

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   363 F. Supp. 2d 514 (E.D.N.Y. 2005) ...................................................14, 15, 16

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................................19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...............................................24-25, 26, 37

*In re Flonase Antitrust Litig.*,
   610 F. Supp. 2d 409 (E.D. Pa. 2009) ...................................................... 18, 19-20

*In re G-Fees Antitrust Litig.*,
   584 F. Supp. 2d 26 (D.D.C. 2008) ..................................................................37

*In re Graphics Processing Units Antitrust Litig.* (*GPU*),
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ....................................................29, 31, 32

*In re K-Dur Antitrust Litig.*,
   MDL No. 1419, 2007 WL 5297755 (D.N.J. Mar. 1, 2007) ....................................14

*In re K-Dur Antitrust Litig.*,
   No. 01-1652, 2008 WL 2660780 (D.N.J. Feb. 28, 2008) ......................................28

*In re Microsoft Corp. Antitrust Litig.*,
   MDL No. 1332, 2003 WL 22070561 (D. Md. Aug. 22, 2003)...........................23, 25

*In re Potash Antitrust Litig.*,
   MDL No. 1996, 2009 WL 3583107 (N.D. Ill. Nov. 3, 2009)...........................18, 19

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ...............................................................30, 39

*In re Tamoxifen Citrate Antitrust Litig.*,
   277 F. Supp. 2d 121 (E.D.N.Y. 2003), *aff'd*, 466 F.3d 187 (2d Cir. 2006) ............10

*In re Tamoxifen Citrate Antitrust Litig.*,
   466 F.3d 187 (2d Cir. 2006)...............................................................................13

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...........................................................19, 30

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...............................................................22

*Kahn v. Option One Mortgage Corp.*,
   No. 05-5268, 2006 WL 156942 (E.D. Pa. Jan. 18, 2006)......................................18

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...........................................................................7, 8

*Kerth v. Hamot Health Found.*,
   989 F. Supp. 691 (W.D. Pa. 1997) ......................................................................10

*King v. Levin*,
   540 N.E.2d 492 (Ill. App. Ct. 1989) ............................................................... 11-12

*Kovac v. Crooked River Ranch Club & Maint. Ass'n*,
   63 P.3d 1197 (Or. Ct. App. 2003)........................................................................10

*Kuehn v. Stanley*,
    91 P.3d 346 (Ariz. Ct. App. 2004) ......................................................................33

*Lalande Air & Water Corp. v. Pratt*,
    795 A.2d 1233 (Vt. 2002) ...................................................................................32

*Laughlin v. Evanston Hosp.*,
    550 N.E.2d 986 (Ill. 1990) .................................................................................29

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...........................................................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................17

*Maddock v. Greenville Ret. Comm'y, L.P.*,
    No. 12564, 1997 WL 89094 (Del. Ch. Feb. 26, 1997) ......................................28

*Marco Island Cable, Inc. v. Comcast Cablevision of South, Inc.*,
    No. 2:04-CV-26, 2006 WL 1814333 (M.D. Fla. July 3, 2006) .............................11

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) ............................................................................... 7-8

*Merck & Co. v. Lyon*,
    941 F. Supp. 1443 (M.D.N.C. 1996) ..................................................................36

*Merrill Lynch Bus. Fin. Servs., Inc. v Performance Mach. Sys. USA, Inc.*,
    No. 04-60861, 2005 WL 975773 (S.D. Fla. Mar. 4, 2005) .................................33

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir. 1984) ...........................................................................28

*Minn. Life Ins. Co. v. AXA Inv. Mgr.*,
    No. 03-4383, 2005 WL 1475336 (D. Minn. June 22, 2005) ...............................12

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
    No. Civ. 03-170, 2003 WL 22272135 (D.N.H. Oct. 2, 2003) .............................36

*N.Y. Life Ins. Co. v. Head*,
    234 U.S. 149 (1914) ........................................................................................ 20-21

*Nader v. Democratic Nat'l Comm.*,
    555 F. Supp. 2d 137 (D.D.C. 2008) ...................................................................11

*Newark v. Delmarva Power & Light Co.*,
    497 F. Supp. 323 (D. Del. 1980) ........................................................................11

*Nygaard v. Sioux Valley Hosps. & Health Sys.*,
    731 N.W.2d 184 (S.D. 2007) ............................................... 33

*Olson v. Wheelock*,
    680 P.2d 719 (Or. Ct. App. 1984) ........................................ 22

*Organon Inc. v. Mylan Pharmaceuticals, Inc.*,
    293 F. Supp. 2d 453 (D.N.J. 2003) ..................................... 12

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ............................................... 7

*People ex rel. Gallegos v. Pac. Lumber Co.*,
    70 Cal. Rptr. 3d 501 (Cal. App. 2008) ............................... 11

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ........................................... 18

*Princeton Ins. Agency Inc. v. Erie Ins. Co.*,
    --- S.E.2d ---, No. 34498, 2009 WL 4020269 (W. Va. Nov. 18, 2009) .................................. 26

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. (PRE)*,
    508 U.S. 49 (1993) ..................................................... 6, 15

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*,
    392 F. Supp. 2d 118 (D.P.R. 2005) ..................................... 22

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) ................................................. 34

*Rouse v. Philip Morris, Inc.*,
    No. 203-2159, 2003 WL 22850072 (S.D.W. Va. Nov. 18, 2003) .......................................... 35

*Sanders v. Brown*,
    504 F.3d 903 (9th Cir. 2007) ............................................... 9

*Schoenbaum v. E.I. duPont De Nemours & Co.*,
    517 F. Supp. 2d 1125, (E.D. Mo. 2007) ............................... 29

*Schoenkopf v. Brown & Williamson Tobacco Corp.*,
    637 F.2d 205 (3d Cir. 1980) ............................................... 7

*Semiconductor Energy Lab. Co., Ltd. v. Samsung Elect. Co., Ltd.*,
    204 F.3d 1368 (Fed. Cir. 2000) ..................................... 2-3, 13

*Shady Grove, P.A. v. Allstate Ins. Co.*,
    549 F.3d 137 (2d Cir. 2008) ............................................... 27

*Siena v. Microsoft Corp.*,
    796 A.2d 461 (R.I. 2002) ................................................................................31

*Sign-A-Way, Inc. v. Mechtronics Corp.*,
    No. 98-1491, 232 F.3d 911 (Fed. Cir. Apr. 5, 2000) ...................................14

*St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.*,
    264 A.D.2d 652 (N.Y. App. Div. 1999) ....................................................39, 40

*State ex rel. Spaeth v. Eddy Furniture Co.*,
    386 N.W.2d 901 (N.D. 1986) .........................................................................32

*State v. Berrill*,
    474 S.E.2d 508 (W. Va. 1996)........................................................................10

*Sun Dun, Inc. v. Coca-Cola Co.*,
    770 F. Supp. 285 (D. Md. 1991) .....................................................................23

*Szukalski v. Crompton Corp.*,
    726 N.W.2d 304 (Wis. Ct. App. 2006) .................................................. 23-24, 25

*Tudor v. Jewel Food Stores, Inc.*,
    681 N.E.2d 6 (Ill. App. Ct. 1997) ...................................................................34

*Warth v. Seldin*,
    422 U.S. 490 (1975)...............................................................................17, 18

*Webb v. Fury*,
    282 S.E.2d 28 (W. Va. 1981) .........................................................................12

*Weiss v. Polymer Plastics Corp.*,
    21 A.D.3d 1095 (N.Y. App. Div. 2005) ..........................................................39

*Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
    641 F.2d 457 (7th Cir. 1981) .........................................................................19

*Williamson v. Allstate Ins. Co.*,
    204 F.R.D. 641 (D. Ariz. 2001) .....................................................................34

*Worldspan, L.P. v. Ultimate Living Group*, LLC,
    390 F. Supp. 2d 412 (D. Del. 2005).................................................................38

*Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*,
    No. 8:07-cv-2093, 2008 WL 3048859 (M.D. Fla. Aug. 4, 2008).................... 34-35

*Yhelka v. Dairy Farmers of Am., Inc.*,
    No. 07-CV-1736, 2008 WL 598279 (W.D. Pa. Feb. 29, 2008)..........................24

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) ......................................................................15

*Zimmerman v. HBO Affiliate Group*,
    834 F.2d 1163 (3d Cir. 1987) ....................................................................3, 18

**FEDERAL CONSTITUTION/STATUTES**

U.S. Const. art. III .................................................................................................17

U.S. Const. amend I ...............................................................................................11

Clayton Act, 15 U.S.C. § 26 ............................................................................ passim

Sherman Act, 15 U.S.C. §§ 1, 2 ...................................................................... passim

**STATE STATUTES**

Del. Code Ann. tit. 6, § 2101 *et seq.* ....................................................................28

Del. Code Ann. tit. 6, § 2531 *et seq.* ....................................................................37

Ga. Code Ann. § 10-1-399(a) ................................................................................26

Idaho Code Ann. § 48-108(2) ................................................................................30

Idaho Code Ann. § 48-113 .....................................................................................30

740 Ill. Comp. Stat. 10/7(2) ..................................................................................30

Kan. Stat. Ann. § 50-634(b) ...................................................................................26

Mass. Gen. Laws Ann. Chapter 93 *et seq.* ...........................................................21

Nev. Rev. Stat. § 598A.060(1) ...............................................................................25

Or. Rev. Stat. § 646.715 .................................................................................... 25-26

Or. Rev. Stat. § 646.780 .........................................................................................22

P.R. Laws Ann. tit. 10, § 258 .................................................................................22

**COURT RULES**

Federal Rule of Civil Procedure 9(b) .....................................................................35

Federal Rule of Civil Procedure 12(b)(6) ..............................................................21

## I.   INTRODUCTION

Like Mylan and the Direct Purchasers, the "End Payors" ("Plaintiffs") ask this Court to equate defeat in a close patent infringement case that is still pending on appeal with sham litigation, despite the Supreme Court's prohibition on doing just that.  Being wrong in a patent infringement case is not the same thing as bringing sham litigation, and court records that Plaintiffs selectively quote in their Complaint (just like others properly considered on this motion) demonstrate unequivocally that, far from being baseless, Boehringer's patent litigation was complex, technical and difficult, and raised open issues of law.[1]  It was litigated for more than three years, tried in a bench trial, and resulted in a 40-plus page slip opinion by a judge who told the parties on the record that "you have presented unique issues and . . . you have on both sides a good record."  Mar. 13, 2008 Trial Tr. at 730, *Boehringer Ingelheim Int'l v. Barr Labs. and Mylan Pharms., Inc.*, Case Nos. 05-700 and 05-854 (D. Del. 2008) (relevant pages attached as Ex. A).  On appeal, one of the Federal Circuit judges who heard argument made short work of Mylan's attempt to treat Boehringer's case dismissively, making clear that:  "[W]e've got some . . . legal issues here, like . . . what does the statute mean . . . ?"  Fed. Cir. Oral Argument, June 1, 2009, at 20:56-21:02, *Boehringer Ingelheim Int'l  v. Barr Labs. and Mylan Pharms., Inc.*, No. 2009-1032 (Fed. Cir. 2009), *available at* http://oralarguments.cafc.uscourts.gov/mp3/2009-1032.mp3.  Plaintiffs' attempt to treat the substance of that case with equal dismissiveness should likewise be rejected.

---

[1] Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") are referred to collectively as "Boehringer" herein.  However, because End Payor Plaintiffs have not yet served BII, this Motion to Dismiss is brought only by BIPI.

Although Plaintiffs assure this Court that Judge Farnan viewed Boehringer's case as a sham, they avoided his court for a reason.  That reason is that Judge Farnan knows very well that this is not simply a case of a company obtaining two patents for the same product.  As Judge Farnan's opinion makes clear, this is a case in which the Patent & Trademark Office ("PTO") *required* Boehringer to split its claims in order to continue their prosecution.  This is a case in which the same patent examiner simultaneously examined the applications for the patents at issue and saw no double-patenting problem.  This is a case in which Mylan developed its double-patenting theory relatively late in the game, abandoning *every other* defense it had asserted and litigated.  But Boehringer had multiple defenses to Mylan's double-patenting theory, defenses with which both the district court and the Federal Circuit wrestled, grappling with the "plain language" of the statutes on which Boehringer relied and the "dicta" and unclear and conflicting case law interpreting those statutes on which Mylan sought to rely.  For these reasons, a determination that Boehringer's patent infringement litigation was objectively baseless would transform patent litigation into a win-or-die proposition and squarely contradict Supreme Court precedent.

Boehringer already has addressed these issues in the motion to dismiss it filed in the Mylan and Direct Purchasers cases.  Rather than repeat those arguments here, BIPI incorporates that entire brief by reference as if fully set forth herein, and refers to specific page numbers in that brief throughout this one.  Those arguments are equally dispositive of Plaintiffs' federal antitrust claim here, as well as their state antitrust and consumer protection claims.  But, in addition, all of Plaintiffs' state claims fail for at least three additional reasons, each an independently sufficient basis for dismissal.  <u>First</u>, all of Plaintiffs' state claims are preempted, as a matter of law, by federal patent law.  *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elect.*

*Co., Ltd.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000). Second, Plaintiffs purport to invoke the laws of

twenty-seven jurisdictions in which they do not live and/or in which they do not allege that their

injuries occurred, and thus, they lack standing to bring claims in any of those states. Casting

their claims as a class action fails to cure that fatal deficiency. *See Allen v. Wright*, 468 U.S. 737,

751 (1984); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987). Third,

almost all of Plaintiffs' state law claims fail because Plaintiffs have not pled the elements

necessary to state a claim under the state laws they attempt to invoke.

For all of these reasons, Plaintiffs' claims are fatally defective and must be dismissed.

## II.    PLAINTIFFS' ALLEGATIONS[2]

The named Plaintiffs in the End Payor Complaint are John Carver, Painters District

Council No. 30 Health & Welfare Fund ("Painters"), Health Plan of Michigan ("HPM"),

Elizabeth P. Gilmore and Vivian Branchofsky.

Plaintiffs bring claims for alleged antitrust violations on behalf of a putative class of

"[a]ll persons and entities in the United States" who, from June 26, 2006 to the present,

"indirectly purchased or reimbursed for Mirapex." (*See* Docket No. 44, End-Payor Pls.'

Consolidated Am. Class Action Compl. ("Compl.") at ¶ 81.)  They are allegedly citizens of

Massachusetts, Illinois, Michigan, Florida and Vermont (*id.* ¶¶ 8-12), respectively, and purport

to bring claims in these states, as well as twenty-six additional jurisdictions in which they do not

allege residence or injury.  Plaintiffs bring their claims on behalf of *indirect* purchasers, meaning

that their claims are not directed at the companies that sold them Mirapex®, but at Boehringer.

---

[2] For the Court's convenience and efficiency, the Preliminary Statement and Factual
Background set forth in the Memorandum Of Law In Support Of Motion To Dismiss Mylan And
Direct Purchaser Plaintiffs' Complaints (Nos. 09-990 and 09-1085, Docket Nos. 67 and 73,
respectively) ("Mylan/Direct Purchaser Br.") are fully incorporated herein by reference. (*See*
Mylan/Direct Purchaser Br. at 1-21.)

(*Id*. at ¶ 81.)  Because Supreme Court precedent bars indirect purchaser claims for damages under the Sherman Act, *see Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), Plaintiffs assert a federal antitrust claim solely for declaratory and injunctive relief (Compl. Count I), but make no plausible allegations of wrongfulness to support an injunction.  Based on the exact same conduct on which Plaintiffs' federal claims depend, Plaintiffs also assert separate and independent claims for damages and/or injunctive relief under the antitrust laws of twenty-one jurisdictions as well as claims under the consumer protection laws of twenty-three jurisdictions (Compl. Counts II-XXXII).  *See* Ex. B, Appendix 1 (identifying the separate grounds for dismissal of each of Plaintiffs' state law claims).[3]

Like the Complaints brought by Mylan, (No. 09-990, Docket No. 1 ("Mylan Compl.")), and the Direct Purchasers, (No. 09-1085, Docket No. 1 ("DP Compl.")), Plaintiffs attempt to allege a scheme to monopolize, but all of their allegations fail because (1) conduct immune from antitrust liability cannot be considered as part of an overall scheme, and Plaintiffs did not, and cannot, allege facts sufficient to strip Boehringer of the immunity that attaches to the procurement, term extension and enforcement of U.S. Patent No. 4,886,812 (the "'812 patent"); (2) the other conduct Plaintiffs attack was not improper because Boehringer had an objectively reasonable basis for that conduct, and because its settlement agreement with Barr Laboratories, Inc. ("Barr") does not extend the scope of the '812 patent beyond its lawful grant; and (3) Plaintiffs have otherwise failed to allege facts that, even when viewed in their totality, are sufficient to support a viable "overall scheme" claim on any theory.  *See* Mylan/Direct Purchaser Br. at Sections III.A-C.

---

[3] BIPI includes relevant authority supporting dismissal of Plaintiffs' state law claims on state-law specific grounds in Appendices numbered 2-11, also attached as Exhibit B and referenced throughout this Memorandum.

Specifically, Plaintiffs allege that Boehringer obtained the '812 patent even though it "knew or should have known" that the '812 patent was invalid for double patenting with respect to U.S. Patent No. 4,843,086 (the "'086 patent"). (Compl. ¶ 4(a).) But, Plaintiffs allege not a single fact in support of that assertion. For example, they do not allege (nor could they) that Boehringer misrepresented or failed to disclose any information to the PTO or engaged in any trickery in the prosecution of either of those patents (or, for that matter, in the prosecution of the original application from which they descended). Moreover, Plaintiffs ignore the judicially noticeable facts that Boehringer was directed *by the PTO* to divide its claims into separate applications and that *the same patent examiner* simultaneously reviewed the applications leading to both the '812 and '086 patents saw no double-patenting issue.

Plaintiffs also allege that Boehringer: (1) listed the '812 patent in the Food and Drug Administration's "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book") publication; (2) sought a five-year extension of the allegedly invalid '812 patent; (3) sued Barr and Mylan Pharmaceuticals, Inc. ("Mylan") in the District of Delaware (the "underlying patent suit") "for allegedly violating this invalid patent with their generic versions of Mirapex to keep them off the market;" (4) filed a terminal disclaimer of the '812 patent after the '086 patent had expired; (5) appealed the decision in the underlying patent suit; (6) filed an infringement suit against Mylan in the District of New Jersey to enforce the '812 patent; (7) appealed the District of New Jersey's dismissal of the suit against Mylan; and (8) entered into a settlement agreement with Barr in the underlying patent suit. (Compl. ¶¶ 4(a)-(h), 5.) But not one of those alleged acts is wrongful because they are all legal, Constitutionally protected governmental petitioning or related acts undertaken with the objectively reasonable belief that the '812 patent was valid, and, other than Boehringer's infringement litigation losses – which the

Supreme Court has held cannot be equated with objective baselessness, *see Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. (PRE)*, 508 U.S. 49, 60 n.5 (1993), Plaintiffs have not alleged a single fact even suggesting that Boehringer's belief in the validity of its '812 patent was objectively baseless.

Nor is that surprising.  The record in the underlying patent infringement suit and in the appeal before the Federal Circuit make clear that Boehringer's infringement suit raised unique and complex issues of law with respect to which the little precedent that existed provided unclear and/or conflicting guidance, thus demonstrating that Boehringer's belief that its '812 patent was valid was, and remains, an objectively reasonable one.[4]  As explained in greater detail below, dismissal of all of Plaintiffs' claims is therefore warranted.

### III.    ARGUMENT

#### A.    Plaintiffs' Claims Fail For The Same Reasons That Mylan's And Direct Purchasers' Claims Fail.

Although Plaintiffs bring their claims under statutes different from those at issue in the Mylan and Direct Purchaser cases, Plaintiffs' claims are based on the identical conduct and, therefore, fail for the same reasons described in the Mylan/Direct Purchaser Brief.

As indirect purchasers, Plaintiffs are barred from seeking damages under the federal antitrust laws.  *See Illinois Brick*, 431 U.S. at 749.[5]  Thus, Plaintiffs ask the Court, instead, for declaratory and injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, "and other applicable law," for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

---

[4] The record of both the underlying patent suit and the Federal Circuit appeal are properly considered on this Motion.  (*See* Mylan/Direct Purchaser Br. at 9 n.6.)

[5] In *Illinois Brick*, the Supreme Court held that "indirect purchasers" – purchasers of the product at issue who purchased not from the alleged antitrust violator, but from someone further down the chain of distribution – could not sue the alleged antitrust violator for damages under federal antitrust law.  *Illinois Brick*, 431 U.S. at 749.

(Compl. ¶ 97.)[6]  Rather than repeat the arguments that Boehringer set forth in the Mylan/Direct

Purchaser Brief, BIPI incorporates those arguments by reference as though fully set forth herein

and, below, simply applies those arguments to the specific statutes invoked by these Plaintiffs.

> **1.      Plaintiffs' Clayton Act Section 16 Claim Fails Because Plaintiffs Do Not Allege Facts Sufficient To Establish A Viable Federal Antitrust Claim.**

Section 16 of the Clayton Act provides for injunctive relief for violations of the federal

antitrust laws.  15 U.S.C. § 26.  "Section 16 does not furnish an independent cause of action.

Rather, it allows the court to fashion relief upon a showing of a separate violation of the antitrust

laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) (affirming dismissal of

appellants' Section 16 claim "[b]ecause appellants failed to state a claim under Section 1 of the

Sherman Act"); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 112 (1986) ("It

would be anomalous, we think, to read the Clayton Act to authorize a private plaintiff to secure

an injunction against a threatened injury for which he would not be entitled to compensation if

the injury actually occurred."); *Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205,

210 (3d Cir. 1980) ("Standing under section 16 is dependent on a showing of threatened loss or

injury from the alleged antitrust violation.").

To obtain injunctive relief under Section 16, however, Plaintiffs must "make a threshold

showing of entitlement to [it]."  *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir.

---

[6] Plaintiffs' request for relief under "other applicable law" should be dismissed because, to survive a motion to dismiss, plaintiffs must – but do not – identify the law they allege has been violated in order to provide adequate notice to the defendants.  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1070 (9th Cir. 2009) (dismissing claims because plaintiff's allegations of violations under "Oregon, Washington, and Any Other Applicable State Law" failed to provide defendant "adequate notice of which state law it allegedly violated"), *cert. filed*, No. 09-356, 78 USLW 3184 (Sept. 23, 2009); *cf. Greer v. Shapiro & Kreisman,* 152 F. Supp. 2d 679, 686 (E.D. Pa. 2001) (holding that plaintiff's complaint provided adequate notice where it "identifie[d] both the law [Plaintiff] believes Defendant violated and the particular conduct").

1996).  To satisfy the threshold requirement, Plaintiffs are required to plausibly allege

"(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the alleged

antitrust violation."  *Id.*  But Plaintiffs have plausibly alleged only legitimate conduct and paired

those allegations with conclusory assertions that Boehringer "knew or should have known" its

conduct was wrong, all the while affirmatively ignoring the judicially noticed facts to the

contrary (e.g., that the patent examiner who simultaneously examined the '812 and '086 patents

on a full record saw no double-patenting issue, and that Boehringer's belief in the validity of its

patent and the timeliness of its terminal disclaimer were grounded in the "plain language" of the

applicable statutes).  (*See* Mylan/Direct Purchaser Br. at Sections II, III.A-C.)  As explained in

detail in the Mylan/Direct Purchaser Brief, Plaintiffs simply have not alleged facts that, if

proven, would establish the required "showing of a separate violation of the antitrust laws."

*Kendall*, 518 F.3d at 1051.  As such, Plaintiffs have failed to allege a viable claim for injunctive

relief under Section 16 of the Clayton Act.

Likewise, without plausible allegations of an antitrust violation, Plaintiffs' request for

declaratory relief cannot survive.  *See, e.g.*, *Columbia River People's Util. Dist. v. Portland Gen.*

*Elec. Co.*, 217 F.3d 1187,1188 (9th Cir. 2000) (affirming dismissal of request for declaratory

relief where plaintiff failed to sufficiently allege a violation of Section 1 of the Sherman Act);

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 343 (D. Del. 2007)

(dismissing plaintiff's request for declaratory judgment on the ground that "plaintiffs [had] not

sufficiently pled a section 2 conspiracy to monopolize claim").

As demonstrated in the Mylan/Direct Purchaser Brief, Mylan and the Direct Purchasers

failed to state a viable claim under Section 1 or 2 of the Sherman Act.  Because Plaintiffs'

Clayton Act Section 16 claim is based solely upon identical – and equally deficient – allegations, it, too, must be dismissed.

> ### 2. The State Antitrust And Consumer Protection Claims Must Be Dismissed Because Plaintiffs Have Failed To Allege Conduct Sufficient To Establish A Viable Claim.

Plaintiffs' failure to allege facts that, even viewed in totality, are sufficient to establish anticompetitive, unlawful activity is likewise fatal to their state law claims, as set forth below.

> #### (a) Like Their Federal Antitrust Claims, Plaintiffs' State Antitrust Claims Fail Because Plaintiffs Do Not Allege Fraudulent, Objectively Baseless Or Improper Conduct.

As the Third Circuit properly has recognized, "[c]ourts have consistently found that the failure to state viable federal antitrust claims is fatal to state antitrust claims." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 993 F. Supp. 271, 281 n.23 (D.N.J. 1998) (holding that plaintiffs' federal antitrust claim "is vitiated by the *Noerr-Pennington* doctrine," requiring disposal of the state antitrust claims, as well), *aff'd*, 168 F.3d 119 (3d Cir. 1999).[7]   In this case, every state antitrust

---

[7] *See also, e.g.*, (in alphabetical order by state) *Sanders v. Brown*, 504 F.3d 903, 919 (9th Cir. 2007) (California courts have held that the *Noerr-Pennington* doctrine applies to state law antitrust liability in the exact same way it applies to federal antitrust claims (*citing Blank v. Kirwan*, 39 Cal. 3d 311, 319-22 (Cal. 1985))), *cert. denied*, 128 S. Ct. 2427 (2008); *Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352, 356 (Iowa 1994) (noting that *Noerr* doctrine is applicable to Iowa tortious interference claim); *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 956 F. Supp. 910, 919 (D. Kan. 1997) (deciding that *Noerr-Pennington* doctrine immunizes conduct under state antitrust statutes as well as federal antitrust statutes, and therefore dismissing plaintiff's Kansas antitrust claim where plaintiff failed to state a claim under the sham exception to the doctrine); *Davric Me. Corp. v. Rancourt*, 216 F.3d 143, 148 n.7 (1st Cir. 2000) (stating that *Noerr-Pennington* "appl[ies] with equal force" to plaintiff's claims under federal and state antitrust statutes because Maine's statute parallels the Sherman Act); *Aurora Cable Commc'n's, Inc. v. Jones Intercable, Inc.*, 720 F. Supp. 600, 603 (W.D. Mich. 1989) (holding that *Noerr-Pennington* doctrine applies to both Sherman Act claims and claims under the Michigan Antitrust Reform Act, and therefore granting defendants' motion for summary judgment on both plaintiff's federal and state antitrust claims); *Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980, 999 (D. Minn. 2003) (stating that court has "no hesitation in concluding that, if faced with the question, the Minnesota Courts would apply the *Noerr-Pennington* doctrine to a Minnesota antitrust claim"); *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163, 171-74

law under which Plaintiffs plead violations is construed consistently with its federal antitrust law analogue or relies upon federal antitrust law as persuasive authority, either by statute or by judicial decision.  *See* Ex. B, Appendix 2 (citing authority).  Thus, conduct that cannot state a claim under the Sherman Act likewise cannot support a state antitrust claim.  *See, e.g.*, *Kerth v. Hamot Health Found.*, 989 F. Supp. 691, 709-10 (W.D. Pa. 1997) ("Since these [state antitrust] claims mirror the federal antitrust claims, they rise or fall with Plaintiffs' federal antitrust claims and will receive like disposition."), *aff'd*, 159 F.3d 1351 (3d Cir. 1998); *see also In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003) ("[S]ince Plaintiffs fail to state a claim under the Sherman Act, and since the state antitrust law claims are based on the same allegations, those claims are also dismissed."), *aff'd*, 466 F.3d 187 (2d Cir. 2006).

As explained in the Mylan/Direct Purchaser Brief, Plaintiffs' claims under Sections 1 and 2 of the Sherman Act must be dismissed because Plaintiffs have failed to allege facts sufficient to establish that Boehringer engaged in any fraudulent, objectively baseless or improper conduct, whether considered independently or as part of an "overall scheme."  (Mylan/Direct Purchaser Br. at Sections III.A-C.)  Because the allegations Plaintiffs make in support of their state antitrust

---

(continued…)

(Miss. 2001) (stating that the *Noerr-Pennington* doctrine is applicable to claims under Mississippi's antitrust statute, and finding that plaintiffs' claims were in fact barred by the doctrine); *Boulware v. Nevada*, 960 F.2d 793, 800-01 (9th Cir. 1992) (affirming judgment that plaintiff's Nevada Unfair Trade Practices Act claim was barred under the *Noerr-Pennington* doctrine to the same degree as its Sherman Act Section 2 claim); *Good Hope Hosp., Inc. v. N.C. Dept. of Health & Human Servs.*, 620 S.E.2d 873, 881 (N.C. App. 2005) (holding that *Noerr* applies to North Carolina courts and affirming dismissal where defendant was shielded by *Noerr* immunity); *Kovac v. Crooked River Ranch Club & Maint. Ass'n*, 63 P.3d 1197, 1201 (Or. Ct. App. 2003) (determining that defendant was immune under the *Noerr-Pennington* doctrine); *State v. Berrill*, 474 S.E.2d 508, 512 (W. Va. 1996) (conducting a *Noerr-Pennington* analysis under state law); *Am. Med. Trans. of Wis., Inc. v. Curtis-Universal, Inc.*, 452 N.W.2d 575, 583 (Wis. 1990) ("While the [*Noerr-Pennington*] doctrine arose in a federal context, the constitutional concerns and right to petition government are equally applicable under state law.").

claims are identical to those alleged by Mylan and the Direct Purchasers in inadequate support of their federal antitrust claims, they, too, are deficient and must be dismissed.

### (b) Plaintiffs' Consumer Protection Law Claims Also Fail For The Same Reasons.

As described in detail in the Mylan/Direct Purchaser Brief (at Section III.B), Boehringer's conduct in procuring, extending and enforcing the '812 patent is immune from antitrust liability under the *Noerr* (or *Noerr-Pennington*) doctrine. Because the *Noerr* doctrine is rooted in First Amendment rights, the Third Circuit applies *Noerr* immunity even outside the antitrust context to state law claims, including consumer protection law claims. *See, e.g.*, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999) (affirming dismissal on summary judgment of state tort claims including unfair competition, malicious prosecution, tortious interference with contract and tortious interference with prospective economic advantage as barred by the *Noerr-Pennington* doctrine); *see also Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (relying upon guidance from "the *Noerr-Pennington* cases" and holding that there is no state tort liability for damage resulting from "inducing legislative, administrative or judicial action").[8]

---

[8] The Third Circuit's application of *Noerr* to state law claims outside the antitrust context is consistent with numerous other courts. *See, e.g.*, (in alphabetical order by state): *Estrada v. City of San Luis*, No. CV-07-1071, 2007 WL 4025215, at *2 (D. Ariz. Nov. 15, 2007) ("Noerr immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." (*quoting Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996))); *People ex rel. Gallegos v. Pac. Lumber Co.*, 70 Cal. Rptr. 3d 501, 513-17 (Cal. App. 2008) (unfair competition claim barred by *Noerr-Pennington*); *Newark v. Delmarva Power & Light Co.*, 497 F. Supp. 323, 328 (D. Del. 1980) (explaining that "state common law [cannot] supersede the right to petition created by the First Amendment and applied to the states by the Fourteenth Amendment"); *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 157 (D.D.C. 2008) (holding state law tort claims barred by *Noerr-Pennington*); *Marco Island Cable, Inc. v. Comcast Cablevision of South, Inc.*, No. 2:04-CV-26, 2006 WL 1814333, at *8-*10 (M.D. Fla. July 3, 2006) (*Noerr-Pennington* barred Florida deceptive trade practices claims); *King v. Levin*, 540 N.E.2d 492, 494 (Ill. App. Ct. 1989) (holding that *Noerr-Pennington*

In *Cheminor*, 168 F.3d at 128, the Third Circuit upheld dismissal of New Jersey state tort claims because they were "based on the same petitioning activity as the federal claims," which had been dismissed as immune under *Noerr*.  Here, too, the state consumer protection law claims stem in substantial part from the same deficient allegations of (immunized) conduct as the federal and state antitrust claims.  (*Compare*, *e.g.*, Compl. ¶¶ 4(a)-(h), 5; *with* Mylan Compl. ¶ 62; DP Compl. ¶¶ 6(a)-(h), 7.)  To the extent Plaintiffs' state consumer protection claims rely on non-petitioning conduct – i.e., the Orange Book listing, terminal disclaimer filing[9] and settlement agreement, that conduct likewise cannot sustain those claims for the reasons set forth in the Mylan/Direct Purchaser Brief.  (Mylan/Direct Purchaser Br. at Section III.C.)

------------

(continued…)

applies outside the antitrust area); *Minn. Life Ins. Co. v. AXA Inv. Mgr.*, No. 03-4383, 2005 WL 1475336, at *11-*12 (D. Minn. June 22, 2005) (barring tortious interference claim under *Noerr-Pennington*); *DirecTV, Inc. v. Rowland*, No. 04-CV-297S, 2005 WL 189722, at *3-*4 (W.D.N.Y. Jan. 22, 2005) (dismissing state statutory claim based in part on *Noerr-Pennington*); *Basic Med. Care Plus, Inc. v. N.C. Mut. Life Ins. Co.*, No. 1:03CV00269, 2005 WL 2205016, at *11 (M.D.N.C. Sept. 6, 2005) (applying *Noerr-Pennington* to N.C. Unfair or Deceptive Trade Practices Act (*citing Reichhold Chemicals, Inc. v. Goel*, 555 S.E.2d 281, 293 (N.C. Ct. App. 2001))); *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 753 (R.I. 2004) ("We also have adopted the *Noerr-Pennington* test, and applied its protection to common-law tort claims." (*citing Cove Road Dev. v. W. Cranston Indus. Park Assocs.*, 674 A.2d 1234, 1237 (R.I. 1996))); *Webb v. Fury*, 282 S.E.2d 28, 37 (W. Va. 1981) (explaining that *Noerr-Pennington* applies "regardless of the underlying cause of action asserted by the plaintiffs."), *overruled on other grounds Harris v. Adkins*, 432 S.E.2d 549 (W. Va. 1993).

[9] For purposes of this motion (like the Mylan/Direct Purchaser motion to dismiss), Boehringer assumes (but does not concede) that, in response to the filing of a terminal disclaimer, the PTO does not "make an independent decision on the merits and . . . acts in merely a ministerial fashion," *Organon Inc. v. Mylan Pharmaceuticals, Inc.*, 293 F. Supp. 2d 453, 458 (D.N.J. 2003), such that a terminal disclaimer filing would not constitute petitioning activity subject to *Noerr* immunity.

**B.      Plaintiffs' State Law Claims Are Preempted By Federal Patent Law And, Therefore, Must Be Dismissed.**

Plaintiffs' claims are premised on conclusory allegations of conduct that either occurred before the PTO (here, obtaining, extending the term of, and terminally disclaiming a patent that Boehringer allegedly "knew or should have known" was invalid for double patenting) or that was allegedly wrongful only because of alleged conduct before the PTO (here, listing in the Orange Book, bringing infringement suits and entering into a settlement agreement with respect to a patent that Boehringer procured even though it "knew or should have known" it would be invalid).  But federal law preempts state causes of action that are based, as here, on allegations of misconduct before the PTO.[10]

Simply put, where a party seeks damages for a wrong asserted under state law, but the wrong is "no more than bad faith misconduct before the PTO," the state claims are preempted by federal patent law and must be dismissed.  *Semiconductor Energy Lab*, 204 F.3d at 1382 (affirming dismissal of state RICO counterclaims where "[a]n additional state cause of action predicated so squarely on the acts of inequitable conduct [before the PTO] would be contrary to Congress' preemptive regulation in the area of patent law" (quotation omitted)); *Abbott Labs. v.*

_____

[10] Although plaintiffs attack the Boehringer-Barr settlement, that agreement "is not precluded by the Sherman Act" absent "evidence of sham litigation or fraud before the PTO" and/or "anticompetitive effects of the Agreement[] . . . outside the exclusionary zone of the patent."  *In re Ciprofloxacin*, 544 F.3d 1323, 1333, 1335 (Fed. Cir. 2008); *see also In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 213 (2d Cir. 2006) ("Unless and until the patent is shown . . . to be objectively baseless, there is no injury to the market cognizable under existing antitrust law, as long as competition is restrained only within the scope of the patent." (citation and quotations omitted)).  Plaintiffs do not plead facts sufficient to establish that the settlement restrained competition beyond the scope of the '812 patent.  (*See* Mylan/Direct Purchaser Br. at Section III.C.)  Thus, the inquiry turns on whether the settlement agreement was objectively baseless.  Based on Plaintiffs' own allegations, that, in turn, depends on conduct before the PTO, i.e. whether Boehringer procured the '812 patent from the PTO knowing that it would be invalid.  As such, Plaintiffs' inclusion of the settlement agreement in their Complaint cannot avoid preemption.

*Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1991) (reversing denial of a motion to dismiss a state law claim, noting that that state law cannot be "invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings before the Patent and Trademark Office").[11]  Such preemption is necessary because "[a]n additional state action would be an inappropriate collateral intrusion on the regulatory procedures of the PTO, 'under the guise of a complaint sounding in tort', . . . and is contrary to Congress' preemptive regulation in the area of patent law."  *Brennan*, 952 F.2d at 1357 (citation omitted); *Ciprofloxacin*, 363 F. Supp. 2d at 544.

Thus, in *Ciprofloxacin*, the court relied on the principles articulated in *Brennan*, and dismissed indirect plaintiffs' state antitrust claims where their *Walker Process* and sham litigation claims were premised on defendant's "alleged bad faith conduct before the PTO" and plaintiffs otherwise did "not allege any malfeasance in the marketplace such as threats to [its generic competitor] or its [generic competitor's] customers, but instead rest[ed] entirely upon actions that occurred before the PTO."  *Ciprofloxacin*, 363 F. Supp. 2d at 543-45; *see also In re K-Dur Antitrust Litig.*, MDL No. 1419, 2007 WL 5297755, at *25 (D.N.J. Mar. 1, 2007) (dismissing plaintiffs' state antitrust claims as "preempted by federal patent law because they rely, either directly or derivatively, upon allegedly fraudulent or inequitable conduct before the PTO to substantiate those claims"); *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 941 (D. Minn. 2006) ("[F]ederal patent law preempts [plaintiff's state tort] claim, because the claim does not allege any actionable conduct except conduct before the PTO.").

---

[11] *See also Sign-A-Way, Inc. v. Mechtronics Corp.*, No. 98-1491, 232 F.3d 911, at *4 (Fed. Cir. Apr. 5, 2000) (a state law claim whose liability component is based only on a violation of the duty of good faith and candor before the PTO is preempted as it provides "a duplicate remedy for inequitable conduct at the state level"); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 545 (E.D.N.Y. 2005) ("Because [indirect plaintiffs' *Walker Process* and sham litigation claims] are coextensive with patent law, they are preempted by patent law."), *aff'd*, 544 F.3d 1323 (Fed. Cir. 2008), *cert. denied*, 129 S. Ct. 2828 (2009).

In finding preemption, the *Ciprofloxacin* court distinguished *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998), in which plaintiffs asserted a state law claim for unfair competition based on allegations that the patent holder, allegedly knowing that its patent was not infringed, threatened to sue plaintiff's actual and prospective customers.  *Ciprofloxacin*, 363 F. Supp. 2d at 544-45.  In *Dow Chemical*, the court held that the tort claim was *not* preempted by federal patent law only because it was based on misconduct *in the marketplace* – the patent holder's threats to its competitor's customers – not activity before the PTO or in the context of litigation.  139 F.3d at 1477.  In *Ciprofloxacin*, by contrast, the plaintiffs alleged only conduct that either occurred before the PTO or was wrongful based on conduct before the PTO, causing the court to determine that the state claims were "coextensive with" and "preempted by patent law."  363 F. Supp. 2d at 545.

The same is true here.  Indeed, Plaintiffs' Complaint is devoid of any allegations that Boehringer sought to enforce the '812 patent in the marketplace *at all*, much less in the requisite bad faith.  *Cf. Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("bad faith is a prerequisite to [a state-law tort claim]; without it, the claim is preempted by patent law"); *cf. Dow Chemical*, 139 F.3d at 1477.[12]  Rather, Plaintiffs only attack conduct that either occurred before the PTO or that was allegedly wrongful because of conduct before the PTO.

---

[12] In any event, within the federal preemption context, courts use the two-part test set forth in *PRE*, 508 U.S. at 62, to determine whether a patent holder acted in "bad faith."  *See, e.g.*, *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1375-76 (Fed. Cir. 2004) (bad faith standard cannot be satisfied absent a showing that patent infringement claims were objectively baseless).  As shown in the Mylan/Direct Purchaser Brief, Plaintiffs' allegations do not, and the undisputed predicate facts demonstrate that Plaintiffs cannot, satisfy that exacting standard.  (*See* Mylan/Direct Purchaser Br. at Section III.B.)  All of the state law claims are, therefore, preempted and barred as a matter of law.

Those allegations cannot save the state claims from preemption.  As the *Ciprofloxacin* court made clear,

> [t]here was nothing in the act of listing the [patent] in the Orange Book that was itself improper, and the filing, according to plaintiffs, was only improper because [it was used] to maintain an allegedly ill-gotten patent.  But this claim in turn depends first on a showing that the [patent] was obtained by fraud on the PTO. *Plaintiffs cannot by this collateral or backdoor method avoid preemption of their state law claim.*

*Ciprofloxacin*, 363 F. Supp. 2d at 546 (emphasis added) (citation omitted); *Daiichi Sankyo, Inc. v. Apotex, Inc.*, No. 030937, 2009 WL 1437815, at *9 (D.N.J. May 19, 2009) (dismissing state law claims as preempted where, without misconduct before the PTO, "no liability could attach to Daiichi's listing the '741 patent in the Orange Book or it's [sic] filing of this infringement action").  Here, Plaintiffs' allegations regarding the Orange Book listing, enforcement actions, and Barr settlement similarly are improper only if used to maintain an improperly obtained patent.  Plaintiffs "cannot by this . . . backdoor method avoid preemption of their state law claim[s]."  *Ciprofloxacin*, 363 F. Supp. 2d at 546.  Preemption applies and Plaintiffs' state law claims are barred in their entirety.

**C.    Plaintiffs' Claims Under The Laws Of All But Four States Must Be Dismissed For Lack Of Standing Under Article III Of The U.S. Constitution.**

Plaintiffs do not have standing in any of the states where they have not alleged either residence or injury, and, under well-settled law, the fact that they purport to bring a class action does not alter that outcome.

**1.    Plaintiffs Lack Standing In Every State In Which They Have Not Alleged Either Residence Or Injury.**

Plaintiffs attempt to invoke the laws of thirty-one jurisdictions even though they are residents of only five states and have alleged injury in, at most, only four of the five states in which they reside.  Plaintiffs allege that they reside or are located in Florida, Illinois,

Massachusetts, Michigan and Vermont (collectively, the "home states").  (Compl. ¶¶ 8-12.)

None of the Plaintiffs claim to reside or do business in any of the other twenty-six jurisdictions

pursuant to the laws of which they seek to assert causes of action.  Nor do Plaintiffs allege that

they bought Mirapex® and suffered injury in any of those twenty-six jurisdictions.

     To demonstrate a case or controversy, as required for standing under Article III of the

Constitution, a plaintiff "must allege *personal injury* fairly traceable to the defendant's allegedly

unlawful conduct [that is] likely to be redressed by the requested relief."  *Allen v. Wright*, 468

U.S. 737, 751 (1984) (emphasis added); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561 n.1 (1992) ("[T]he injury must affect the plaintiff in a personal and individual way.").

Plaintiffs' failure to allege any injury to themselves outside of four (of the five) alleged home

states requires dismissal of Plaintiffs' state antitrust and consumer protection claims under

Article III, U.S. Const. art. III, § 2 (conferring jurisdiction only over "cases or "controversies"),

in every state except Florida, Illinois, Massachusetts and Vermont.[13]

### 2.    The Fact That Plaintiffs Purport To Bring A Class Action Does Not Confer Standing On Them.

     That Plaintiffs purport to bring their claims on behalf of a class of similarly situated

indirect purchasers does not endow them with standing.  "[N]amed plaintiffs who represent a

class must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they

purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (*quoting Simon v. E. Ky.

Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

---

[13] As in the twenty-six jurisdictions in which Plaintiffs do not claim to reside, Plaintiffs have no standing in Michigan, the last of the home states, where they have alleged no injury. (*See* Compl. ¶ 10.)

"It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to *one* of many claims he wishes to assert." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (emphasis added); *see also Warth*, 422 U.S. at 501 (1975) (a class action plaintiff must "allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants"); *Kahn v. Option One Mortgage Corp.*, No. 05-5268, 2006 WL 156942, at *7 (E.D. Pa. Jan. 18, 2006) ("named [p]laintiffs cannot meet standing requirements by relying solely upon the claims and potential standing of putative class members" (*citing Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action."))).  Rather, "[i]t is well settled that to be a class representative on a particular claim, the plaintiff must himself have a cause of action on *that* claim." *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987) (emphasis added).

The Court must analyze each of Plaintiffs' claims "separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado*, 221 F.3d at 1280 (quotations and citations omitted); *see also In re Potash Antitrust Litig.*, MDL No. 1996, 2009 WL 3583107, at *9-*10 (N.D. Ill. Nov. 3, 2009) (dismissing claims where "Indirect Purchaser Plaintiffs present[ed] no allegations that they have suffered an 'injury in fact' for each of the asserted claims").

### 3. Courts Regularly Dismiss Indirect Purchaser Claims for Lack of Article III Standing.

Standing is a threshold inquiry and courts are instructed to dismiss claims before ruling on class certification when no named plaintiff has a cause of action.  *Zimmerman*, 834 F.2d at 1170; *see also In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 413 (E.D. Pa. 2009) ("Unless at least one named Plaintiff can state a claim for relief under each count[,] Plaintiffs do not have

standing to bring claims as part of a putative class action.").  Courts regularly dismiss such purported class actions where named plaintiffs fail to allege personal injury under each count in a complaint, instead attempting to "bootstrap [the standing] element into their claim by means of class action certification."  *Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 641 F.2d 457, 469 (7th Cir. 1981); *see also Potash*, 2009 WL 3583107, at *10 (dismissing 84 state antitrust, consumer protection and unjust enrichment claims where plaintiffs did not reside or allege *personal* injury in those states)); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (dismissing 24 state antitrust claims where named plaintiffs neither resided in nor *personally* purchased the drug at issue in those states); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (dismissing state claims where no named plaintiff could allege personal injury, holding that "the named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief").

In *Flonase*, *supra*, for instance, indirect purchasers – including Painters, a plaintiff in this case as well – alleged that defendants filed sham citizen petitions with the FDA in order to delay a generic's entry into the market.  Indirect purchasers asserted antitrust and consumer protection claims under various state laws, including states in which none of the named plaintiffs resided or alleged an injury.  Citing *Zimmerman*, 610 F. Supp. 2d at 414, the court noted that a plaintiff must have a cause of action for each claim for which he seeks to be a class representative.  The court held that "Named Plaintiffs cannot establish standing merely by relying on claims of putative class members," and dismissed each claim asserted under the law of a state in which no named plaintiff resided.  *Id.* at 419.[14]

---

[14] After inferring that the named plaintiffs had alleged injury (and, thus, had standing) in their home states, the *Flonase* court dismissed the home state claims as well, finding that

Here, Plaintiffs completely disregard any obligation to allege facts sufficient to establish Article III standing.  Named Plaintiffs purport to assert claims on behalf of persons residing, not only in their home states of Florida, Illinois, Massachusetts, Michigan and Vermont, but also on behalf of persons or entities residing in twenty-four other states, the District of Columbia and Puerto Rico (collectively, the "Non-Resident States").  (*Compare* Compl. ¶¶ 8-12 (identifying residences of the named plaintiffs) *with id.* *¶¶* 98-316 (identifying the states under which plaintiffs purport to assert causes of action).)  Plaintiffs fail, however, to allege facts sufficient to establish their purchase of Mirapex® and resultant injury in *any* particular state.  And HPM fails to allege that it purchased or reimbursed members for purchases of Mirapex® even in its home state of Michigan, much less anywhere else.  (Compl. ¶ 10.)

Viewed charitably, Plaintiffs can at best be said to have alleged injury in four of their home states – Florida, Illinois, Massachusetts and Vermont (the "Four Home States") – by virtue of residing or doing business there and presumably purchasing or reimbursing for Mirapex® there.  Thus, while Plaintiffs' state claims fail in every state because they have not alleged sufficient, plausible facts to support the causes of action they invoke, Plaintiffs' claims in every state outside the Four Home States fail for the additional reason that Plaintiffs lack Article III standing to assert them.[15]

---

(continued…)

plaintiffs failed to state a claim under each of those laws.  610 F. Supp. 2d at 419.  Even if the Court here infers that plaintiffs have standing in their home states, as in *Flonase*, those claims still fail.  They are each deficient for all the reasons previously discussed, as well as for the additional, independently-sufficient state-specific reasons described *infra*, in Sections III.D and E.

[15] Moreover, state statutes do not create a cause of action for out of state plaintiffs alleging out of state injury.  *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161-62 (1914) ("This is so

**D.    Plaintiffs' State Antitrust Law Claims Fail For Several Additional State-Specific Reasons.**

Nearly all of Plaintiffs' state antitrust law claims must be dismissed for the separate, independently sufficient reason that Plaintiffs have failed to plead the requisite elements necessary to sustain those claims and avoid dismissal under Rule 12(b)(6).

**1.    Plaintiffs Are Precluded From Bringing Suit Under the Massachusetts, Puerto Rico and Oregon Antitrust Laws.**

In *Illinois Brick*, 431 U.S. at 749, the Supreme Court of the United States barred indirect purchaser lawsuits for damages under the federal antitrust laws.  (*See supra* at 6 n.5.)  Although some states have expressly chosen to forego this prohibition, many states have adopted the bar against indirect purchaser actions for damages either expressly or impliedly.  For example, the Supreme Judicial Court of Massachusetts has explicitly held that indirect purchasers are barred from bringing an action for damages under the Massachusetts Antitrust Act, Mass. Gen. Laws ch. 93, §§ 1-14A.  *Ciardi v. F. Hoffman-La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002) ("Because the Antitrust Act is to be construed in harmony with judicial interpretations of comparable Federal antitrust statutes, the rule of law established in *Illinois Brick Co. v. Illinois* would apply with equal force to preclude claims brought under G. L. c. 93 by indirect purchasers in Massachusetts." (citation omitted)).[16]

_____

(continued…)

obviously the necessary result of the Constitution that it has rarely been called in question and hence authorities directly dealing with it do not abound.").

[16] Although the Complaint cites to the Massachusetts antitrust law (Mass. Ann. Laws ch. 93, *et seq.*), it purports to allege a violation of "Massachusetts state consumer protection laws." (Compl. ¶ 187.)  To the extent Plaintiffs intended to bring their claim under Massachusetts' consumer protection law, found in Chapter 93A, the claim still fails, and must be dismissed for the reasons stated in Section III.E, *infra*.

Puerto Rico, like Massachusetts, has not repealed *Illinois Brick*, and its antitrust law is to be harmonized with federal antitrust law.  P.R. Laws Ann. tit. 10, § 258; *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 392 F. Supp. 2d 118, 144 (D.P.R. 2005) ("Puerto Rico's antitrust laws . . . mirror the federal antitrust statutes.").  For this reason, indirect purchasers have been found to have no right of action under Puerto Rico antitrust law.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1187-88 (N.D. Cal. 2009) (dismissing indirect purchaser claims under the Puerto Rico antitrust statute, refusing "to find standing in the absence of an explicit *Illinois Brick* repealer, either by statute or case law").

Because Plaintiffs, as self-titled "end payors," bring this suit on behalf of "[a]ll persons and entities in the United States . . . who . . . indirectly purchased or reimbursed for Mirapex in the United States . . . other than for re-sale" (Compl. ¶ 81), Plaintiffs' antitrust claims under Massachusetts and Puerto Rico law must be dismissed.

Unlike Massachusetts and Puerto Rico, Oregon has repealed *Illinois Brick*, allowing indirect purchasers to bring suit under its antitrust law since July of this year.  Or. Rev. Stat. § 646.780 (amended by 2009 Oregon Laws Ch. 304 (H.B. 2584)).  But all of Boehringer's alleged misconduct occurred before Oregon repealed *Illinois Brick* and granted indirect purchasers a cause of action.  Because Oregon's antitrust statute may not be applied retroactively, *Olson v. Wheelock*, 680 P.2d 719, 720 (Or. Ct. App. 1984) ("the legislature intended [Oregon's antitrust law] to apply prospectively only"), Plaintiffs' Oregon antitrust claim also must be dismissed.

> **2.    Because Plaintiffs Have Not Alleged A Substantial Connection To *Intra*state Commerce, Their State Antitrust Claims Are Deficient Under The Laws Of Nine Jurisdictions.**

The antitrust laws of the District of Columbia, Massachusetts (Carver's home state), Mississippi, Nevada, Oregon, South Dakota, Tennessee, West Virginia and Wisconsin require a

plaintiff to allege a specific nexus between defendant's alleged wrongdoing and *intra*state commerce. *See* Ex. B, Appendix 3 (citing authority). Conclusory and "bare allegations" stating the existence of such a nexus without specific factual allegations demonstrating the connection are insufficient to fulfill this requirement. *See, e.g.*, *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (rejecting "bare allegation" regarding defendants' sales in Tennessee because plaintiff failed "to establish how defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree").

Specifically, the antitrust laws of the District of Columbia and Mississippi require at least some portion of the conduct at issue to have occurred wholly within the state (and not in *inter*state commerce) for the claim to survive. *See, e.g.*, *Sun Dun, Inc. v. Coca-Cola Co.*, 770 F. Supp. 285, 288-89 (D. Md. 1991) (dismissing plaintiffs' District of Columbia antitrust claim on summary judgment because plaintiff could not demonstrate that its purchase did *not* involve an *inter*state element); *In re Microsoft Corp. Antitrust Litig.*, MDL No. 1332, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (dismissing Mississippi antitrust claims where plaintiffs failed to allege "at least *some* conduct by [defendant] which was performed wholly intrastate").

Massachusetts, Tennessee and Wisconsin require the alleged anticompetitive conduct to have had a *substantial* effect on their state commerce and/or the people of the state. *Ciardi*, 762 N.E.2d at 308 n.11 ("[T]he Antitrust Act only regulates trade or commerce that 'directly and substantially affects the people of the commonwealth.'" (*quoting* Mass. Gen. Laws ch. 93, §§ 2, 4) (emphasis omitted)); *Freeman*, 172 S.W.3d at 524 (rejecting "bare allegation" regarding defendants' sales in Tennessee because the plaintiff failed "to establish how the defendants' anticompetitive conduct affected Tennessee commerce to a substantial degree even though the conduct resulted in [the plaintiff] paying higher prices to retailers"); *see also Szukalski v.*

*Crompton Corp.*, 726 N.W.2d 304, 311 (Wis. Ct. App. 2006) (affirming dismissal of price-fixing complaint because "claims [were] general assertions of what appears to be a nationwide issue, not allegations that show a problem that has a 'substantial effect' on Wisconsin" (*quoting Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005))), *abrogated on other grounds, Meyers v. Bayer AG*, 735 N.W.2d 448 (Wis. 2007).

Though Plaintiffs couch their legal conclusions as factual allegations, stating that Boehringer's "conduct affected trade and commerce in [state], harming End Payors located therein," (*see, e.g.*, Compl. ¶¶ 124, 208, 221, 304, 313), such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot withstand a motion to dismiss. *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action will not do."); *Yhelka v. Dairy Farmers of Am., Inc.*, No. 07-CV-1736, 2008 WL 598279, at *1 (W.D. Pa. Feb. 29, 2008) (citations omitted) (court is "not compelled to accept 'unsupported conclusions and unwarranted inferences' or 'a legal conclusion couched as a factual allegation'") (*quoting Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).[17]

Nor does the allegation that Boehringer "possessed nationwide-monopoly power" (*e.g.*, Compl. ¶¶ 123, 207, 220, 261, 293, 303, 312) satisfy the requirement for an *intra*state connection. *See, e.g.*, *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1156-60 (N.D. Cal. 2007) (holding that allegations of nationwide effects were insufficient to state a viable claim under several state antitrust statutes); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1099 (N.D. Cal. 2007) (granting defendants' motion for judgment on the

---

[17] Plaintiffs vary the language of their allegations in the South Dakota and Tennessee counts, but the variations on plaintiffs' boiler plate allegations add none of the facts required to sustain these claims. *See supra Freeman*, 172 S.W. 3d at 524.

pleadings with respect to plaintiffs' South Dakota state antitrust claim where "[a]t most, plaintiffs have alleged only that defendants' activities had a substantial effect on the foreign and interstate commerce of the United States," and "plaintiffs' complaint [did] not *specifically* allege any conduct or conspiracy that takes place, or has any effect within South Dakota") (emphasis added); *Szukalski*, 726 N.W.2d at 311 (dismissing "claims [that were] general assertions of what appears to be a nationwide issue, not allegations that show a problem that has a 'substantial effect' on Wisconsin"); *In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561, at *2 (dismissing plaintiffs' Mississippi Antitrust Claims because plaintiffs "failed to allege . . . that this monopoly was to be accomplished by any transactions lying wholly within the state" and, instead, plaintiffs "[made] only the entirely conclusory averment that 'Defendant Microsoft obviously created a monopoly in both interstate and intrastate commerce'").

Plaintiffs do not allege a single *fact* supporting a nexus between Boehringer's alleged conduct and commerce within *any* state.  In fact, Plaintiffs allege no facts establishing that Mirapex® was actually sold in any of the states under which they purport to bring claims, much less that Mirapex® was sold to any of the named Plaintiffs in those states.  Nor do Plaintiffs allege that end payors in the Non-Resident States purchased Mirapex® in any of those jurisdictions, when they purchased it, what they paid for it, or any other facts supporting the allegations of the Complaint.  Absent such factual allegations, Plaintiffs cannot even meet the more liberal nexus standard applied in Nevada, Oregon, South Dakota and West Virginia, which requires a plaintiff to allege *some* conduct or effect to have occurred in the state.[18]  Plaintiffs'

---

[18] *See* Nev. Rev. Stat. § 598A.060(1) ("[I]t is unlawful to conduct any part of [a conspiracy in restraint of trade] *in this State*[.]" (emphasis added)); Or. Rev. Stat. § 646.715 ("Without limiting the scope of *ORS 646.705* to *646.805* and *646.990*, it is the legislative purpose that it apply to intrastate trade or commerce, and to interstate trade or commerce

antitrust claims under the laws of the District of Columbia, Massachusetts, Mississippi, Nevada, Oregon, South Dakota, Tennessee, West Virginia and Wisconsin must therefore be dismissed.

### E. Plaintiffs' Consumer Protection Claims Are Also Defective.

Plaintiffs allege that Boehringer violated the consumer protection laws of twenty-three jurisdictions.[19]  These claims, although styled as violations of consumer protection law, are all premised on the same allegations of monopolization, attempted monopolization and conspiracy as the remainder of the Complaint.  In short, although called by a different name, they are the same deficient antitrust claims discussed above, and they are all subject to dismissal for the reasons stated in Sections III.A, B and D, *supra*.  All of those claims must also be dismissed for the following state-specific reasons.

### 1. Plaintiffs Cannot Pursue A Class Action Under Georgia, Kansas and New York Consumer Protection Laws.

The consumer protection laws of Georgia, Kansas and New York do not permit class actions.  *See* Ga. Code Ann. § 10-1-399(a) (plaintiff "may bring an action individually, but not in a representative capacity"); Kan. Stat. Ann. § 50-634(b) ("A consumer who is aggrieved by a violation of the Act may recover, but not in a class action, damages or a civil penalty[.]");

---

(continued…)

involving an actual or threatened injury to a person or property located in this state.") (emphasis in original); *DRAM*, 516 F. Supp. 2d at 1099 (dismissing claims under the South Dakota antitrust statute because the plaintiffs failed to "specifically allege any conduct or conspiracy that takes place, or has any effect within South Dakota"); *Princeton Ins. Agency Inc. v. Erie Ins. Co.*, --- S.E.2d ---, No. 34498, 2009 WL 4020269, at *4 (W. Va. Nov. 18, 2009) ("In comparing this provision to its federal counterpart, we recently recognized that '[t]he primary distinction between W. Va. Code § 47-18-3(a) and Section 1 of the Sherman Act is that the West Virginia statute applies to contracts and conspiracies in restraint of trade 'in this State' while the federal statute is applicable to contracts and conspiracies 'in restraint of trade or commerce among the several States, or with foreign nations.'").

[19] *See* Compl. ¶¶ 102, 106, 113, 117, 129, 135, 142, 146, 154, 172, 180, 187, 203, 216, 228, 235, 240, 246, 255, 274, 288, 299, 308.

*Cunningham v. Bayer AG*, No. 603820/00, 2003 WL 25780718 (N.Y. Sup. Ct. Oct. 15, 2003)

("Plaintiffs are asserting, as a class action claim, a claim for consumer deception under GBL

§ 349, for what is actually an antitrust claim under the Donnelly Act. . . . Allowing plaintiffs to

maintain this claim as a class action would undermine the bar on maintaining class actions for

violations under the Donnelly Act.  Otherwise, such an expansive interpretation of section 349 of

the language prohibiting unfair practices would change the entire New York antitrust

enforcement scheme, which the authors of GBL § 349 specifically intended to avoid by limiting

the language of section 349 to deceptive acts and practices and omitting 'unfair methods of

competition.'"), *aff'd*, 24 A.D.3d 216 (N.Y. App. Div. 2005).  Accordingly, Plaintiffs' claims

under these statutes must be dismissed.[20]

> **2.    Plaintiffs Cannot Circumvent Antitrust Law Limitations By Recasting Their Claims As State Consumer Protection Law Violations.**

Despite Plaintiffs' attempt to relabel them as consumer protection law violations,

Plaintiffs' claims, at their core, are antitrust claims; i.e., monopolization, attempted

monopolization, and conspiracy in furtherance of monopoly and in unreasonable restraint of

trade based on the allegedly unlawful exclusion of generic competition.  Plaintiffs thus have no

right to pursue these claims in (1) Delaware and Georgia which provide no private right of action

for antitrust violations at all; (2) Arkansas, Illinois (Painters' home state), Kansas, Maine, New

York, Rhode Island and West Virginia because those states' consumer protection statutes either

do not extend to cover antitrust violations or contain requirements inconsistent with the elements

of an antitrust violation; or (3) Idaho, Illinois and Rhode Island because those states either have

---

[20] In the 2009 term, the Supreme Court will review the question of whether a state legislature can properly prohibit the federal courts from using the class action device for state law claims.  *Shady Grove, P.A. v. Allstate Ins. Co.*, 549 F.3d 137 (2d Cir. 2008), *cert. granted*, 77 USLW 3472, 77 USLW 3605, 77 USLW 3609 (U.S. May 04, 2009) (No. 08-1008).

adopted *Illinois Brick* or do not allow indirect purchaser plaintiffs to avoid a state legislature's intent to prevent indirect purchaser suits by alleging antitrust claims "dressed in Consumer Fraud Act clothing." *Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1997). *See* Ex. B, Appendix 4.

> **(a)** **Because Plaintiffs' Claims Under Delaware and Georgia Consumer Protection Law Are Really Antitrust Claims For Which Those States Provide No Private Right Of Action, They Must Be Dismissed.**

Delaware and Georgia provide no private right of action for antitrust violations at all. *See* Ex. B, Appendix 4 (citing authority, including Del. Code Ann. tit. 6, § 2101 *et seq.*; *Maddock v. Greenville Ret. Comm'y, L.P.*, No. 12564, 1997 WL 89094, at *6 (Del. Ch. Feb. 26, 1997) ("[T]he Delaware statute does not permit individuals to enforce their rights by bringing private actions."); *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 715 (11th Cir. 1984) (dismissing plaintiffs' state antitrust and unjust enrichment claims where plaintiffs did not dispute defendants' contention that there is no private right of action for antitrust claims under Georgia law)). "[W]here the applicable state law . . . simply does not recognize a private cause of action for antitrust violations, a plaintiff cannot circumvent the statutory framework by recasting an antitrust claim" as a consumer protection claim. *In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 WL 2660780, at *5 (D.N.J. Feb. 28, 2008) (dismissing unjust enrichment claims "fundamentally based on the same facts and alleged wrongdoing" as antitrust claims that were not cognizable under state law). Here, Plaintiffs have alleged no misconduct other than Boehringer's purported antitrust violations; thus, Plaintiffs' Delaware and Georgia consumer protection claims – antitrust claims recast as consumer protection law violations in an improper attempt to circumvent the statutory bar against private antitrust actions – must be dismissed.

**(b)    Plaintiffs' Transparent Effort To Recast Their Antitrust Claims As Consumer Protection Law Violations Also Cannot Save Their Claims In Arkansas, Illinois, Kansas, Maine, New York, Rhode Island Or West Virginia.**

Plaintiffs' consumer protection claims under the laws of Arkansas, Illinois (Painters' home state), Kansas, Maine, New York, Rhode Island and West Virginia are not actionable and must be dismissed because the consumer protection laws of those states either expressly or impliedly do not create rights of action for antitrust theories. *See* Ex. B, Appendix 4 (citing authority, including, *e.g.*, *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 992-93 (Ill. 1990) (affirming dismissal of plaintiff's claim under the Illinois Consumer Fraud Act ("ILCFA") reasoning that "[t]here is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism"); *Schoenbaum v. E.I. duPont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1152-53 (E.D. Mo. 2007) (dismissing plaintiffs' claims under the Kansas Consumer Protection Act, in part, because the Kansas Supreme Court has acknowledged that antitrust claims "do not fall within the practices prohibited by the KCPA"), *vacated in part on other grounds*, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007); *Cunningham*, 2003 WL 25780718, at *13 (dismissing action brought against brand-name drug manufacturer for settlement entered into with generic manufacturer in patent-infringement suit under both the New York antitrust and consumer protection laws because "this court disagrees with the proposition that a mere antitrust violation, without more, falls under the scope of section 349"); *In re Graphics Processing Units Antitrust Litig.* (*GPU*), 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007) (dismissing claims under the Maine statute because the alleged conspiracy, resulting in higher prices for the products at issue, could not have induced plaintiffs to purchase them)).

(c)     As Indirect Purchasers, Plaintiffs Cannot Bring Claims Under
Idaho, Illinois and Rhode Island Consumer Protection Laws.

Consistent with *Illinois Brick's* prohibition on private antitrust actions for damages by indirect purchasers, indirect purchasers may only recover in actions *brought by the Attorney General* under Idaho's antitrust law.  Idaho Code Ann. § 48-108(2); § 48-113 (limiting private causes of action to persons "injured directly or threatened with direct injury").  Plaintiffs cannot circumvent this prohibition by bringing their antitrust claims under the consumer protection law. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 907 (N.D. Cal. 2008) (dismissing indirect purchaser class action in light of holding of Idaho Supreme Court that "indirect purchasers may not bring suit under the Idaho Consumer Protection Act").

Illinois (Painters' home state) similarly provides no private right of action for indirect purchaser classes under the Illinois antitrust law.  *See* 740 Ill. Comp. Stat. 10/7(2) (only the attorney general may maintain a class action on behalf of indirect purchasers for claims asserted under the Illinois Antitrust Act).  Plaintiffs attempt to make an end run around this restriction by stating their antitrust claim as a violation of the ILCFA, (Compl. ¶ 154), but Illinois courts are on to, and hostile to, such attempts at circumvention, and prohibit indirect purchasers from bringing class action antitrust claims under the ILCFA, as well.  *Gaebler*, 676 N.E.2d at 229-30 (dismissing plaintiff's consumer protection claim where indirect purchaser classes are precluded from bringing a "classic antitrust allegation[] dressed in Consumer Fraud Act clothing" (quotation omitted)).[21]

---

[21] Plaintiffs also try to make an end run around Illinois' prohibition on indirect purchaser actions by alleging that their "injuries were not secondary, consequential or remote."  (Compl. ¶ 155.)  But that conclusory claim does not alter their status as indirect purchasers barred from asserting Illinois antitrust and consumer protection claims.  *See, e.g.*, *Terazosin*, 160 F. Supp. 2d at 1368-69 ("end payors" are indirect purchasers barred from bringing antitrust claim for damages for an alleged conspiracy between brand-name and generic drug manufacturers); *In re*

Rhode Island likewise has adopted *Illinois Brick*, and precludes indirect purchasers from bringing antitrust claims. *Siena v. Microsoft Corp.*, 796 A.2d 461, 465 (R.I. 2002) (adopting *Illinois Brick* and dismissing indirect purchasers' state antitrust claim, because only the state may recover on their behalf). As in Idaho, Plaintiffs cannot avoid this limitation by alleging their attempted monopolization, monopolization and conspiracy claims under the guise of the consumer protection statute. *See GPU*, 527 F. Supp. 2d at 1030-31 (dismissing Rhode Island consumer protection claim reasoning that, *inter alia*, "Rhode Island does not permit state-law antitrust claims by indirect purchasers"). Thus, Plaintiffs' so-called consumer protection law claims under Idaho, Illinois and Rhode Island law must be dismissed for this reason as well. *See* Ex. B, Appendix 4 (citing authority).

### 3. Plaintiffs' Failure To Adequately Plead Unfair, Unconscionable, Fraudulent Or Deceptive Conduct Defeats Their Consumer Protection Claims Under Sixteen State Statutes.

The consumer protection laws of numerous states require a plaintiff to plead unfair, unconscionable, fraudulent or deceptive conduct by defendants. *See* Ex. B, Appendix 5 (citing authority). Though Plaintiffs sometimes state that Boehringer engaged in "unfair," "unconscionable," "deceptive" or "fraudulent" acts, (*e.g.*, Compl. ¶¶ 117(b), 129(b), 172(b)),

---

(continued…)

*Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997) (pharmacies were indirect purchasers and could not recover from drug manufacturers under the Sherman Act, where drug wholesalers were direct purchasers entitled to assert Sherman Act claims). Nowhere in the Complaint do Plaintiffs claim to have purchased Mirapex® directly from Boehringer or to have had any dealings with Boehringer, at all. In fact, three of the five Plaintiffs expressly claim to have "*indirectly* purchased Mirapex from Defendants." (Compl. ¶¶ 8, 11, 12 (emphasis added).) Painters, an "employee welfare benefit plan," claims to have been injured "when it purchased and/or provided reimbursement for Mirapex purchases" – again, without alleging that it ever purchased anything from Boehringer. (Compl. ¶ 9.) And, HPM, an HMO, does not even allege that it, or its members, ever purchased Mirapex® at all. (Compl. ¶ 10.)

Plaintiffs offer only the conclusory allegation that Boehringer "knew or should have known" the '812 patent was invalid and that, as a result, Plaintiffs, and those similarly situated, overpaid for Mirapex®. But that factually unsupported allegation is insufficient to satisfy this requirement. *See, e.g.*, *Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 536 (Ill. App. Ct. 2008) (holding that "[c]harging an unconscionably high price, by itself, is generally, insufficient to establish a claim for unfairness"); *GPU*, 517 F. Supp. 2d at 1029-30 (dismissing District of Columbia and Kansas Consumer Protection Act claims because "pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high").

Plaintiffs' Complaint is completely devoid of any factual allegations regarding how or why Boehringer "knew or should have known" its patent was invalid, and the Complaint nowhere alleges that Boehringer deceived or defrauded the PTO. Thus, the Complaint's conclusory allegations do not even rise to the level of establishing any misconduct before the PTO at all, much less do they satisfy the unfair, unconscionable, fraudulent or deceptive element required under the laws of sixteen jurisdictions. *See, e.g.*, *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 905 (N.D. 1986) (upholding dismissal of a North Dakota Unlawful Sales or Advertising Practices Act claim based on failure to allege fraudulent or deceitful conduct); *Lalande Air & Water Corp. v. Pratt*, 795 A.2d 1233, 1235-36 (Vt. 2002) ("Absent something more in the way of unfounded or oppressive legal tactics . . . or some other unconscionable conduct, we cannot conclude that the [conduct] in this case constituted an unfair practice under the Consumer Fraud Act.").[22]

---

[22] This deficiency requires dismissal under Arizona, Arkansas, Delaware, District of Columbia, Florida, Idaho, Illinois, Kansas, Maine, Minnesota, New Mexico, New York, North Dakota, Rhode Island, South Dakota and Vermont consumer protection law.

Plaintiffs also state in certain counts that Boehringer's conduct "violates the policy and spirit of federal and state antitrust laws . . . [,] offends an established public policy in favor of robust competition and . . . is immoral, unethical, oppressive, unscrupulous[.]"  (*E.g.*, Compl. ¶¶ 117(b), 129(b), 172(b).)  But Plaintiffs' all too familiar "formulaic recitation of the elements" of a consumer protection claim under certain states' laws is legally insufficient.  *Twombly*, 550 U.S. at 555; *Merrill Lynch Bus. Fin. Servs., Inc. v Performance Mach. Sys. USA, Inc.*, No. 04-60861, 2005 WL 975773, at *9 (S.D. Fla. Mar. 4, 2005).  The absence of any facts to support these allegations means these claims cannot survive this motion to dismiss.

### 4. Plaintiffs' Failure To Plead Their Reliance Upon Misrepresentations By Boehringer Defeats Their Consumer Protection Claims Under Arizona, Georgia, Illinois, Maine And South Dakota Law.

Plaintiffs' failure to adequately plead reliance – indeed, they plead no reliance at all – upon an alleged fraud or misrepresentation of fact by Boehringer defeats their consumer protection claims under the laws of Arizona, Georgia, Maine and South Dakota.  *See* Ex. B, Appendix 6 (citing authority, including, *e.g.*, *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004) (holding that both a false promise or misrepresentation and reliance by the consumer are required elements of a claim brought under Arizona's consumer fraud statute); *Ford v. Saint Francis Hosp., Inc.*, 490 S.E.2d 415, 420 (Ga. Ct. App. 1997) (affirming directed verdict for defendant on claim under Georgia Fair Business Practices Act because there was no evidence of reliance on defendant's alleged misrepresentations); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 197-98 (S.D. 2007) (dismissing deceptive trade practices claim where plaintiffs failed to plead that their injuries were sustained *as a result of* defendants' alleged deception)).

Illinois (Painters' home state) has a similar requirement.  Under the ILCFA, plaintiff must adequately plead that defendant intended that plaintiff rely on defendant's deceptive acts or

misrepresentations.  *See, e.g.*, *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill.

2002) (stating that one element of a claim under the ILCFA is defendant's intent that the plaintiff

rely on the deceptive act or practice); *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App.

Ct. 1997) (same).

Plaintiffs' pleading failures and affirmative allegations independently and collectively

defeat this claim.  First, Plaintiffs allege no facts demonstrating misrepresentation or deceit.

Second, rather than demonstrating that Plaintiffs relied upon some misrepresentation material to

their decision to purchase Mirapex®, or that Boehringer intended they rely upon such a

misrepresentation, Plaintiffs allege that they were "forced to pay supra-competitive prices." (*See,

e.g.*, Compl. ¶ 299(a).)  Such an allegation is inconsistent with reliance upon a misrepresentation

because reliance requires a decision to purchase, and Plaintiffs allege they had no choice in their

decision to purchase Mirapex®.

> **5.    Plaintiffs' Failure To Plead Unfairness, Fraud Or Deceit With
> Particularity Requires The Dismissal Of Their Consumer Protection
> Law Claims In Arizona, Delaware, Florida, Kansas, Minnesota and
> West Virginia.**

To state a claim under their respective consumer protection statutes, Arizona, Delaware,

Florida, Kansas, Minnesota and West Virginia all require Plaintiffs to state with particularity

facts supporting their allegations of unfairness, fraud or deceit in violation of the consumer

protection statute.  *See* Ex. B, Appendix 7 (citing authority, including, *e.g.*, *Williamson v.

Allstate Ins. Co.*, 204 F.R.D. 641, 643-45 (D. Ariz. 2001) (dismissing claim under Arizona

Consumer Fraud Act because plaintiff failed to plead with sufficient particularity what

representations were false and why); *Wrestlereunion, LLC v. Live Nation Television Holdings,

Inc.*, No. 8:07-cv-2093, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (dismissing claim

under Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because general allegation

-34-

that defendant "engaged in unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts or practices" did not meet heightened pleading requirement applied to FDUTPA claims)).  In other words, to state a claim under these states' laws, Plaintiffs must plead specific facts (i.e., who, what, when, where, and how), demonstrating the allegedly unfair, deceptive, or fraudulent conduct.  *Rouse v. Philip Morris, Inc.*, No. 203-2159, 2003 WL 22850072, at *5 (S.D.W. Va. Nov. 18, 2003).

Plaintiffs fail to satisfy this requirement.  Instead, they provide generalized claims that Boehringer's conduct is unfair because it produced "substantial injury in the form of higher prices for critical drugs," (Compl. ¶ 102(a)), or allege that Boehringer's conduct was "unfair and deceptive, and unconscionable" because "it violate[d] the policy and spirit of the federal and state antitrust laws," and "offend[ed] an established public policy in favor of robust competition" (*see, e.g.*, Compl. ¶¶ 117(b), 135(a), 172(b), 203(a), 308(b)).  Plaintiffs allege *no facts* to support these conclusory statements, and their allegation that Boehringer "knew or should have known" that the '812 patent was invalid – again, with no facts in support of that statement – is, of course, insufficient to meet the exacting pleading standards of Rule 9(b) and these states' laws.  (*See* Compl. Counts II, V, VII, XII, XVI, XXXI (adding no new factual allegations).)

Because the Complaint contains no facts supporting their allegations, Plaintiffs' claims cannot meet Fed. R. Civ. P. 9(b) pleading standards, and the Arizona, Delaware, Florida, Kansas, Minnesota and West Virginia consumer protection claims fail for this reason as well.

> **6.** **Plaintiffs' Failure To Plead The Requisite Nexus Between Defendants' Alleged Misconduct And Intrastate Commerce Defeats Their Consumer Protection Claims Under The Laws Of Eleven States.**

Plaintiffs do not allege any facts indicating that Boehringer's alleged misconduct occurred "primarily and substantially" in, or even within, any given state at all, as they must to state a cause of action in six of the states whose consumer protection laws they seek to invoke.

To state a consumer protection claim under the laws of Arizona, California, Delaware, Illinois (Painters' home state), Massachusetts (Carver's home state) and New York, Plaintiffs must allege a specific nexus between the defendant's conduct and *intra*state commerce.  *See* Ex. B, Appendix 8 (citing authority).  Illinois and Massachusetts specifically require the alleged conduct to have occurred "primarily and substantially" within the state.  *See, e.g.*, *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 850-55 (Ill. 2005) (holding that a plaintiff can bring a private cause of action under the ILCFA "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois").  Similarly, the consumer protection laws of Arizona, California, Delaware and New York apply only to acts committed within those states.  *See, e.g.*, *Mueller Co. v. U.S. Pipe & Foundry Co.*, No. Civ. 03-170, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) ("In the absence of any alleged unfair method of competition or unfair or deceptive act or practice which took place within New Hampshire, the harm suffered by [plaintiff] within the state does not state a claim under RSA 358-A:2.").

Plaintiffs' pleading deficiencies similarly defeat their consumer protection claims under the consumer protection laws of Nebraska, New Hampshire, New Mexico, North Carolina and Vermont (Branchofsky's home state), because Plaintiffs have alleged no facts supporting their allegation that Boehringer's conduct affected either people or businesses *within* those states.  *See, e.g.*, *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing plaintiff's North Carolina Trade Practices Act claims where "plaintiffs have failed to allege a substantial effect on any in-state business operations").

### 7.      Plaintiffs' Status And/Or Their Failure To Allege Their Intended Personal, Family Or Household Use Of Mirapex® Defeats Their Consumer Protection Claims Under The Laws Of Eight Jurisdictions.

The consumer protection statutes of the District of Columbia, Georgia and Kansas provide a cause of action to consumers only.  *See* Ex. B, Appendix 9 (citing authority, including,

*e.g.*, *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 43 (D.D.C. 2008) ("[I]t is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the [D.C. Consumer Protection and Procedures] Act covers.") (citation omitted)). Plaintiffs do not allege they purchased Mirapex® from Boehringer (precluding their claim under District of Columbia law), nor can Painters fit within the statutory definition of "consumer" found in Georgia and Kansas law. *See* Ex. B, Appendix 9. Carver, Gilmore and Branchofsky do not allege that they were consumers as required under those states' laws, *id.*, and HPM does not even allege that it ever purchased or reimbursed for Mirapex® at all. (Compl. ¶¶ 8, 10-12.)

Additionally, under the consumer protection laws of the District of Columbia, Georgia, Kansas, Maine, Rhode Island, South Dakota and West Virginia, Plaintiffs must allege and demonstrate that they purchased the goods at issue primarily for personal, family or household purposes. *See* Ex. B, Appendix 9. Plaintiffs allege no facts supporting this allegation and their claims thus fail for this reason as well.[23]

Delaware's Deceptive Trade Practices Act ("DTPA"), Del. Code Ann. tit. 6, § 2531 *et seq.*, provides no cause of action for consumers or businesses in "a retail consumer relationship" with defendants. *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993). Instead, this statute addresses unreasonable or unfair interference with the *horizontal relationship* between businesses. *Id.* (plaintiff lacked standing to bring claim under DTPA where it only had a retail

---

[23] Nor can Painters and HPM overcome this deficiency because, as business entities, they are precluded from bringing claims under state laws that require Mirapex® to have been purchased for personal, family or household purposes. *See, e.g., ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997) (a corporation did not have standing to bring a private action under the Deceptive Trade Practices Act); *DRAM*, 516 F. Supp. 2d at 1119 (dismissing claim without leave to amend under the West Virginia Consumer Credit and Protection Statute because plaintiffs failed to, and could not, allege that they were "natural persons who purchased goods for household, personal, or family purposes, as required pursuant to the WVCCP").

consumer relationship with the defendants because "a litigant has standing under the DTPA only

when such person has a [horizontal] business or trade interest at stake which is the subject of

interference by the unfair or deceptive trade practices of another"); *Worldspan, L.P. v. Ultimate*

*Living Group, LLC*, 390 F. Supp. 2d 412, 414-15 (D. Del. 2005) (plaintiff lacked standing under

DTPA where relationship between plaintiff and defendant was that of a consumer with a seller

because statute is limited to redressing unfair practices affecting the horizontal relationship

between businesses).  Here, Plaintiffs bring this action on behalf of end payors of Mirapex® and

not on behalf of any business in a *horizontal business relationship* with Boehringer.  As such,

Plaintiffs have no standing under Delaware's DTPA.

> **8.    Because Plaintiffs Failed To Comply With Pre-Filing Notice Requirements Under The Laws Of Georgia, Massachusetts And West Virginia, Their Consumer Protection Claims In Those States Must Be Dismissed.**

Plaintiffs have not alleged that they provided the requisite pre-filing notice of their claims

to Boehringer, as required under the consumer protection laws of Georgia, Massachusetts and

West Virginia.  This deficiency requires dismissal of these claims for this additional reason, as

well.  *See* Ex. B, Appendix 10 (citing authority).

> **9.    Because Plaintiffs Have Not Alleged Conduct By Boehringer Specifically Directed At Consumers, Their New York Consumer Protection Law Claim Must Be Dismissed.**

New York requires a defendant's conduct to have been directed at consumers in order to

state a claim under the New York consumer protection law.  *See In re Auto. Refinishing Paint*

*Antitrust Litig.*, 515 F. Supp. 2d 544, 553 (E.D. Pa. 2007) (dismissing indirect purchasers' New

York consumer protection claim where the allegedly wrongful conduct took place between paint

manufacturers, and the impact on the prices charged to distributors was not consumer-oriented as

required by N.Y. Gen. Bus. Law § 349).  Absent some such *direct* contact between plaintiff and

defendant, a claim under New York's consumer protection law fails.  *Weiss v. Polymer Plastics Corp.*, 21 A.D.3d 1095, 1097 (N.Y. App. Div. 2005) (affirming dismissal of consumer protection claim on summary judgment because transaction between two companies meant there was no "direct solicitation" by defendants to plaintiffs, the ultimate consumer); *St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l, Inc.*, 264 A.D.2d 652, 655 (N.Y. App. Div. 1999) (affirming summary judgment on consumer protection claim where "[t]he transaction in this case . . . did not involve any direct solicitation by [defendant], which had no contact with the plaintiff, the ultimate consumer;" and "sophisticated business entities . . . acted in an intermediary role in the transaction, thereby reducing any potential that a customer in an inferior bargaining position would be deceived"); *SRAM*, 580 F. Supp. 2d at 908 (dismissing indirect purchasers' New York consumer protection claim for failure to allege consumer-oriented conduct because "any [deceptive conduct] would have been directed at the [direct purchaser, non-consumer] Plaintiffs").

Here, Plaintiffs allege that Boehringer "made public statements about the prices of Mirapex . . . [that] either omitted material information that rendered the statements made materially misleading or affirmatively misrepresented the real cause of price increases for Mirapex," (Compl. ¶ 240(f)), "adversely affect[ing] the public interest in the State of New York," (*id.* ¶ 240(i)).  However, Plaintiffs provide *no* factual allegations supporting these claims – no allegations regarding the content of those statements or when, by whom, and to whom these "public statements" were made, and no factual support for the alluded-to "price increases."  (*See id.* ¶¶ 24-80 (setting forth plaintiffs' "Factual Allegations" and containing no mention of price increases and misrepresentations to the public).)  Plaintiffs' "Factual Allegations" state that Boehringer's alleged misconduct prevented generic competitors from entering the market, *id.*

¶ 78, but without competition, Boehringer would have no cause to misrepresent the reasons for Mirapex® pricing.  In short, any misconduct Plaintiffs have alleged, if they have alleged any at all, is limited to conduct before the PTO – conduct that is decidedly not consumer-oriented.  *See, e.g.*, *St. Patrick's Home for the Aged & Infirm*, 264 A.D.2d at 655 ("The transaction in this case . . . did not involve any direct solicitation by [defendant], which had no contact with the plaintiff, the ultimate consumer.").  For this reason, too, Plaintiffs' New York consumer protection claim must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in Boehringer's Memorandum of Law in Support of Motion to Dismiss Mylan and Direct Purchaser Plaintiffs' Complaints, the End-Payor Plaintiffs' Consolidated Amended Class Action Complaint (Docket No. 44) should be dismissed in its entirety.  Because Plaintiffs have already amended their complaint once and since further amendment would be futile (*see* Mylan/Direct Purchaser Brief at 26-27), the court should grant such dismissal with prejudice.

Dated: December 21, 2009

Respectfully submitted,

/s/ Paula W. Render
*Attorneys for Defendant Boehringer Ingelheim*
*Pharmaceuticals, Inc.*

Laura E. Ellsworth (leellsworth@jonesday.com)
Pa. I.D. No. 39555
Amy K. Pohl (akpohl@jonesday.com)
Pa. I.D. No. 89348
Cecilia R. Dickson (crdickson@jonesday.com)
Pa. I.D. No. 89348
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania  15219
(412) 391-3939
(412) 394-7959 (fax)

Michael Sennett (msennett@jonesday.com)*
Pamela L. Taylor (ptaylor@jonesday.com)*
Paula W. Render (prender@jonesday.com)*
Erin L. Shencopp (eshencopp@jonesday.com)*
Yael D. Aufgang (yaufgang@jonesday.com)*
JONES DAY
77 West Wacker Drive
Chicago, Illinois  60601
(312) 782-3939
(312) 782-8585 (fax)

*Admitted *Pro Hac Vice*

CHI-1732658